Good morning, Your Honors. May it please the Court, we'd like to reserve two minutes for rebuttal. My name is Janet Hsu for Petitioner Keith Nance. I am a certified law student at the University of California, Irvine School of Law, under the supervision of David Ettinger. This is an appeal from summary judgment of an RLUPA claim. Are you going to introduce your co-counsel? Oh, I'm sorry. Yes, I'd like to start by arguing that there's at least a triable issue. Are you going to tell us who they are? I'll address the Beard claim. He's asking you to introduce Coco. My co-counsel, Itohano Kogbo, will argue that there's at least a triable issue that ADC has substantially burdened his religious practice of using halal-scented oils for Friday prayer. I see. You're splitting argument. Okay. With regards to the Beard, the district court granted summary judgment because it found that Nance failed to address the one-inch policy that went into effect on June 1, 2015, and failed to explain how this policy is a substantial burden on his religious practice. But, in Nance's pro se opposition to summary judgment, Nance does acknowledge the new policy. He states that, quote, Modification to D-0704 fails to establish a penological compelling concern, which justifies denial by defendants to accommodate the plaintiff's sincerely held religious belief he's commanded as a Muslim adherent to grow a full beard. On top of that, Nance cites to various verses to explain his beliefs that he's commanded to grow a beard, and that a prison policy that restricts his practice imposes a substantial burden on these beliefs. Because ADC imposes disciplinary action upon growing out a beard beyond one inch, and because ADC does not allow Nance to buy halal scented oils for weekly prayers, ADC does substantially burden Nance's religious beliefs. This court should reverse summary judgment. There are several errors. What are the limits to this? I mean, prisons have serious security concerns. People try to escape. People try to engage in trafficking of contraband. They often commit violence against each other. They have things that are illegal and dangerous. And what must a prisoner show to—I mean, how far can a prisoner go in defying the rules that are there in place to promote safety and other legitimate concerns? The limits, Your Honor, are embedded in the statute itself. Once we show that there is a substantial burden, the burden shifts to the government to show that imposing this burden is in furtherance of a compelling governmental interest. Well, let's talk about the beard. Okay, let's talk about the beard. We can talk about the oil with your co-counsel. Beard, you can hide things in a beard. You can—it makes it more difficult to recognize prisoners. I mean, prisoners, if they all have beards, look a lot more similar than if they're clean-shaven. Why aren't these legitimate concerns? Well, the government has to prove that this is the least restrictive means, and Nance has offered to provide for a photo identification once he grows out a beard, and defendants— I'm not sure how that helps. I mean, even if you have a photo, bearded men tend to look more similar to each other than without facial hair. I mean, the prison can take that position. It seems perfectly—particularly if the beards are fairly long, facial hair does tend to obscure the facial features. There's nothing—I mean, the fact that he's willing to sit for a photo doesn't seem to defeat that. Well, the burden is still on the government to prove that this is the least restrictive means. And here, the defendants do not even attempt to specify how, in this context— Well, I'm not sure what else he can do. I mean, say, look, you have a beard. You know, that obscures your face. And what can you do short of saying you've got to take the beard off? I mean, I can't imagine what you have in mind, what is sort of a less restrictive thing they might do. Let's say we recognize that, yes, it's legitimate. Telling prisoners to pass is a legitimate concern of the prison. Let's say we're there, okay? And we say, okay, okay, this is a legitimate concern, but let's— you know, what they're doing by prohibiting the beard is too restrictive. So we're going to turn to our lawyer, your lawyer now, and say, well, tell us, what can we do short of requiring that they not have beards that's less restrictive? To, you know, make sure that as prisoners are filing by, as they're milling around, you know, they don't stand still. You know, prisoners—because there are lots of prisoners, we want to be able to have our guards be able to tell them apart easily. What's the less restrictive thing you can do other than, say, shave your beard? I think that's on the burden of the government. Well, I know, but you are now our lawyer, and so we want to steer clear of this. So now, as our lawyer, tell us, what is it we might do that is less restrictive? What did the U.S. Supreme Court say in Holt could be done to allow Holt to have his beard without impinging on governmental interests? I believe in Holt the Supreme Court held that photo identification could easily resolve this issue. And it is important to note that ADC is in the minority of institutions that even has a limit. Most states in the Ninth Circuit do not have an express length limitation. Well, that just calls into question the legitimacy of the interest. You say, well, other prisons don't. This prison does. So that calls into question their interest. But I'm asking you to assume that we think it's a legitimate interest. So you can't do that. Saying, oh, they could just do away with the policy doesn't help you any. Well, with regards to least restrictive means, Nance has offered that once he grows out his beard, the prison can take a new photo. And the government has not. Well, he doesn't have to offer it. They can take a photo every day of the week if they want to. They don't need his permission. Right. But the government cannot refute, doesn't refute this alternative. So that's it. That's advice. You say taking a photo is enough. That's the less restrictive mean. Yes, Your Honor. Here, again, all defendants show are conclusory terms that his shaving policy is, quote, narrowly tailored to accommodate safety and security concerns. And under strict scrutiny, these conclusory assertions are plainly insufficient. I'm sorry. What are the conclusory assertions? That's all they offer. It's okay. I'm sorry. Am I out of time? Well, because the disappointment. I'm sorry. What was your answer? My answer was that the inquiry is not whether the policy in general furthers a compelling governmental interest. The court has to look at the context of the religious claimant and look to the marginal interest in enforcing the challenged government action in that particular context. That's abstract. That's too abstract for me. Why don't you say it in plain English? In plain English, the inquiry here has to look at the specific context. And the court has to look at how this restriction furthers a compelling interest and uses the least restrictive means. Okay. That's about as abstract as the last one. Tell me in plain English what you've got in mind. The least restrictive means? Yeah. Yeah. I mean, just say it. Say it. Something that even a non-lawyer would understand. I'm a warden now. You're advising me. Tell me in plain English. In plain English, there is no other way to further a compelling interest like security and safety. There's just no other way. And here, defendants fail to meet that burden. And because a district court erred when it required Nance show how these beliefs are critical and essential, which is not the Arlupa standard, this court should reverse summary judgment. Okay. You want to yield the rest of your time to your co-counsel? Yes. Thank you. May it please the Court. My name is Itohana Kokpo, and I will be moving on to discuss the use of scented oils. This court should reverse due to confusion on the part of the government. ADC's policy contradicts itself, and it cannot meet a rational basis standard. Confusion on the part of the government? On the part of the government. We usually reverse because the district court erred. They did err. Okay. So that's really what you need to show, the district court erred. The district court erred in its misapplication of a government's policy. ADC's policy contradicts itself. The central issue here is whether Nance can purchase oils. ADC already allows oils into the prison, so long as they're donated. Nance would simply like to be able to purchase oils because he can guarantee that they're halal, meaning that they come from a Muslim vendor. But because ADC's policy restricts him from doing so, he's unable to get scented oils. In fact, there's nothing on the record to show that ADC has ever had oils donated to the prison. So their policy effectively renders him unable to ever get scented oils. Couldn't he be the donor, donate the oils to himself and his co-religionists at the prison? He would only be able to do that if he was first able to purchase the oils, which is the exact policy that the restriction has. This court has actually held that a substantial burden can be found where alternatives require a substantial delay. Let me try to understand. So I think by purchasing it, he has to order it. I mean, they're not available in the commissary, right, the prison commissary, right? In some prisons, they are. No, they're not. I assume they're not available at this commissary, right? Currently, no. They used to be. He used to be able to purchase them in the way you'd purchase any other items. Okay, so what happens if he orders them? I take it there are vendors that sell to prisons, right? There are vendors who, pre-approved Muslim vendors, who sell it to prisons. And so there are vendors who sell these scented oils to prisons, that are certified to sell to prisons. There are vendors who are certified to sell to prisons. And so just walk me through what happens. So let's say he orders from one of these vendors, you know, pays. I don't know how they pay. I guess there's a system of paying the money over. And what happens at that point? Well, at that point, if ADC allowed him to do so, he's offered to allow them to store it in the chaplain's office. No, you added an if to my question. I didn't have an if. I said what happens today if he orders this? If he orders this today, it goes into the chaplain's office with other religious items that are stored. And on Fridays, during group prayers and during the two group holidays, he would take the oils from the chaplain. The entire process is watched. The chaplain watches the entire process. It's returned. He engages in prayer. So what's the beef if he can do all of that? That's the problem. The policy contradicts itself. They will not allow him to purchase the oil. I just asked you what happens today if he orders. Everything you've told me sounds like it's fine. So what's he complaining about? He's not able to order them. Well, I'm sorry. I just asked you what happens if he orders it today. And you told me they go to the chaplain, right? Yes. Okay. Well, I'm sorry. If he ordered them today, he would never receive the oils. Okay. See, I asked that question. So he orders them today. He would not receive them. What would happen to them? They would come into the prison? He would not even be able to place the order. They have pre-approved lists of items that can be ordered. I see. So they're not on the list. They're not on the list. So even though there are vendors out there that provide these items, they're not on this prison's list of items that he can order. That's correct. They're not on the list. He's not able to order them. So even if he says, look, I'm ordering them in order to donate them to the prison, he can't do it? Not at this time. And the prison has not given him that alternative. Is he willing to participate in group worship with oils, assuming they could get them? Or is his religious belief requiring him to do individual worship with the oils? Or do you know? He's asking for them strictly for group worship. For group worship. Which is what ADC's policy allows. Again, the only issue here is how he can access the oils. ADC allows scented oils into the prison, but they have to be donated. He would like to purchase the oils because he can guarantee that they're halal. And ADC will not allow him to do so. And the substantial delay and uncertainty that he receives from this is a substantial burden for the stated reasons. And because he filed this claim as a pro se litigant and his claim should have been broadly construed by the district court, they erred in granting summary judgment in favor of ADC. And this court should reverse the lower court's opinion. Are you waiving his constitutional claims as opposed to his RLUIPA claims? Yes. We are waiving the constitutional. We are refining under the RLUIPA statute. Thank you. Thank you. We'll hear from the warden. How long is your beard? I think it's a quarter inch, less than a quarter inch. Did you measure it? I did not measure it, but I've been asked that question before while working on this case. Good morning, Your Honors. May it please the court. My name is Neil Singh from the Arizona Attorney General's Office, and I'm here for the defendants. I guess I'd first like to point out that I think there's a deviation between what Mr. Nance's argument was before the district court and what the argument is now. This business of donations. His pro se argument or his? His pro se argument. That could well be. Because to be clear, this is not a ban case. This is not a case where the prison is banning scented oils. Scented oils would be permitted if they are donated and used in group ceremony. What does he do if they aren't donated? What if he goes to the chaplain and says, where's my oils? And the chaplain said, nobody donated any today. What happens then? And here's the problem. There's nothing in the record that addresses that. The argument that Mr. Nance is taking on appeal now to this court is that there is no evidence that donated oils would be available, so on and so forth. Outside of the record, I would disagree with that, but there's nothing in the record about it. And the issue there is that the burden on this argument rests with Mr. Nance, not with the government. The government has the burden. He doesn't have to prove that he can't get it now. It's enough that he proves that there was a restriction that unreasonably burdens him, because if it relies simply on donations, donations could, even if they're available now, could run out at any point. So he has certainly put into issue the question of whether he should be entitled to have a steady supply of these things or a reliable supply of these things by buying them. That is on the table, right? And that's not in any way waived by failure to raise below. So explain to me, what legitimate reason does the prison have for not allowing him to buy the oils, having them go to the chaplain as if they were donated, and making himself a donor, essentially self-donating? What's the conceivable legitimate reason that the prison has for that? Well, Your Honor, the hypothetical that you just posed is not... You know, you're going to fight the hypothetical. Why don't you start by saying, I don't have a good answer to what you, you know, at least acknowledge. Well, try to answer my question. Now, if you want to sort of explain to me later why it's a stupid question, you can do that. But why don't you humor me and answer my question? Do you remember what the question is? I think so. I know it's not a stupid question, Your Honor. It's perfectly fine. I ask lots of stupid questions. I'm not ashamed of it. That's why we're here, you know, partly to avoid stupid ideas we might have. So we have counsel helping us out. So why don't you answer my question and then explain to me why it's stupid or irrelevant. No, it's certainly not stupid, Your Honor, because it was actually addressed below. Okay, so just answer the question. The prison does not want individual inmates to have scented oils in their individual cells. Well, but they ask, did you remember my question? Please repeat it, Your Honor. Okay. Are you going to listen this time? Yes. Okay. What is a legitimate reason for prohibiting plaintiffs from ordering these things from a halal vendor and donating them to the prison, having the vendor then send them to the chaplain who will keep them from group worship, as if they were ordered by an outside, donated by an outside party? I don't think there's a reason to prohibit that. Okay. And is it in fact prohibited? I don't believe so. Well, opposing counsel has told me it's not on the list of approved things. So is she mistaken about that? I believe respectfully she is mistaken, because in the record... In other words, Your Honor is presenting to us today that this afternoon Mr. Nance can order these things from the prison vendor, and that if he's not able to do that, you are binding the warden to allow him to do that. Your Honor, what is in the record? I'm asking a question. I'm asking a question. So if it's in fact not on the list, you are now binding the warden by your statement today that he can order it? The unknown for me is... No, no, no, no, no. Just answer my question. Are you binding the warden? No. Okay. So then we have to assume that it's not on the list, because you're not willing to bind the warden to this. So justify the failure to let him do this. I'm unable to do so, Your Honor, because if this was not on the list... So why should we not rule against you from the bench on that issue? Because Mr. Nance has been given the opportunity to have items donated. He was told that by Chaplain Linderman at Volume II, ER 103, Section or Paragraphs 42 and 43 of Mr. Linderman's declaration. He was told, you can have scented oils donated to you. Whether this needs to be put on the list or not is outside the question. So why is that relevant? He claims, look, it burdens my right to have these oils because I don't always have a donor. I don't know whether the donor is going to use a halal vendor. So even if they're donated, I can't be sure that these are things I can actually use in my religious practice. You've already said, I believe, you've already conceded that there is no legitimate reason not to allow him to buy them and donate them to be sent to the chaplain for use in group ceremonies, right? And you still concede that, right? Yes. It was not a mistake. Okay. So why don't you lose on this issue right now? We don't lose on the issue, Your Honor, because this wasn't put into the record. What wasn't put on the record? I mean, what wasn't put on the record? Well, going back to what I think is the primary issue is there must be proof of a tribal issue, at least, that there is a substantial burden on his religious exercise. But you have no justification for this. So how substantial does a burden have to be? I mean, he has said this burdens him. There's no doubt that it's a genuine, legitimate, sincere religious belief. And you have stood there twice and said there's no rational justification for it. Now, why don't you be a man and confess error and move on? I mean, you know, this is — I mean, you've got no place left to go. Your Honor, the — And we can then talk about things that are more favorable to you. The district court — I mean, I agree with the district court's reasoning in the case, which is that the statute requires — there's two parts of it that need to be analyzed. And, Your Honor's questions, they're very good questions, and the state of Arkansas had a lot of trouble with these same questions. You know, I spent all night thinking about these questions, so thank you. But it's not going to change — it's not going to change anything. Flattery is not going to change anything. The fact is you've got a policy that has no justification, that you have conceded has no justification, and that burdens the prisoners what — I mean, there's no rationale, there's no safety concern, nothing. You know, you've said there's nothing there. Isn't the better course for you to just confess error on this point and move on to something else? Your Honor, I'm having trouble with what the error was. We did not take a position — Look, if Mr. Nance wants to order these things this afternoon, is there any reason, illegitimate reason, that prisons should not allow him to do that? For the purpose of the group ceremony? Yes. I'm hesitating to represent something to you without knowing the truth. The truth of the matter is — There's no truth. I mean, there's no truth. I'm asking you a question, you know. He wants to order these things. Is there any legitimate reason he should not be able to order these things to go to the chaplain to be used in group ceremonies? I'm unaware of any. However, the reason the prison wants to regulate how — which materials come into the prison, whether scented oils should come in or unscented oils should come in, has to do with narcotic detection. It has to do with — But these are certified vendors, right? You know, these vendors are certified. Has there been any suggestion that everything else they provide is legitimate, but on the scented oils they are going to provide — come on, I mean, you know. No. I mean, no. I mean, these are vendors who have been vetted and so on, right? There's no real concern. There's no legitimate concern that they are going to slip in something illegal. The prison is able to regulate that part of the operation. There we go. There we go. So I am agreeing with you on that point, Your Honor. Okay. So there's no reason Mr. Vance shouldn't order this afternoon. After court, counsel can call him up and say, hey, order it, and the prison is not going to give him any difficulty about it, right? The difficulty the prison has is — Now, I'm asking you. Well, the prison has to decide. I'm asking you. I think it's a yes or no answer to this question. Yeah. I would say that — It's hot in here. Your Honor, without knowing whether Mr. Nance has suffered a substantial burden to his religious — Forget about whether he has or not. Is there any legitimate reason the prison should prohibit this? Never mind whether it has anything to do with his religious — Is there any legitimate reason the prison should prohibit this? I can't think of any, Your Honor. There we go. Now, you're going to go back and call the warden and tell him not to get interfered with Mr. Nance's ordering these things, aren't you? If the court — I want you to talk to the attorney general about this. Okay. After this, talk to the attorney general. I would like the attorney general to then call the warden and tell the warden him, her, boy warden, girl warden, man warden. At the present time, I believe so. There we go. Call the warden and tell him to stop this. I will do so, Your Honor. There we go. Okay. Let's talk about the beard. Okay. The beard — well, our position on both scented oils and beard — and the beard issue is similar, that the initial burden must rest with the plaintiff to show that his religious exercise has been burdened. And so — He said it does. He cited passages from the Koran that he interprets to mean that he has to have a beard at least fist size. Is that the — I'm not quite sure what that means. About this much beard? I've always assumed it meant this. Okay. And whatever it is — and you haven't really challenged his sincerity, right? Correct. So what's left for you to go? I mean, you know, it seems to me that at that point the only thing you can do is say, well, we nevertheless have a legitimate interest to override the sincere belief. I mean, he's not faking, right? No, we don't allege that he's faking. We are simply stating that he hasn't demonstrated the substantial burden. There must be — there is a burden. The question for the prisoner — I'm sorry. I'm not sure I understand this. If you say he sincerely believes this is required of him religiously, which you, I think, have conceded. Yes. You know, I think you're being very forthright, and I really appreciate that. Once he has a legitimate command, why doesn't it follow that being required not to follow the command becomes a substantial burden? I mean, if this is sincerely held belief that this is a legitimate command, can a court, can anybody second-guess as to whether or not, oh, this is a big command or a little command or, you know — Especially at summary judgment. Well, Your Honors, the — I mean, this Court has held in its prior case law that there must be — there is a difference between a mere inconvenience and a substantial burden. And what we have here is not a flat ban on a beard. We have a limitation on how far he can grow his beard. And we are just saying that he must demonstrate something more than a mere inconvenience to him. What can he do other than say, look, I sincerely believe, I interpret these passages in the Quran to say, it's got to be a beard of that size. What else can he do, especially as Judge Owen points out at summary judgment? Yes. And my answer would be that he simply has to articulate why it matters to him, why it matters to him personally. How does it affect him? Is he going to go to hell? What do you want to say? I would — I'm almost out of time. I would point to court — That's okay. We're not going to let you off so easily. Oh, sure. Don't even hope to sit down until — for a while. I have a question. Go ahead. No, no. You answer the judge's question first, and then I'll ask mine. Your Honor, I think that the war soldier case is actually very illustrative, because in war soldier you had a prisoner who was Native American, and he described — in no theological terms. It doesn't have to be complicated or in lawyer terms. He describes why the cutting of his hair mattered to him. He had not cut his hair since 1971. I think it was a 2005 case or so. And he described that he had cut it once only because his father had died in the 1980s that one time. This was a matter of spiritual importance to him. That's all that a prisoner has to do is illustrate that this matters to me and it affects my religious exercise. That is the point that we are making. We are not stating that he has to cite, you know, passages and texts, et cetera. Well, did he not say that? And in addition, did he not also cite religious passages? Well, he did. Beyond his own statement that it was his religious belief that you don't contest. Yes. And I think that the passages go to sincerity. I mean, if we were challenging the sincerity or if we were challenging whether the exercise that he's engaging in is of a religious nature or not, well, Islamic literature clearly supports his position. So that would be an incorrect position for us to take or an unproven argument for us to make. We are saying that how does this matter to the prisoner? Because he would be barred and disciplined if he doesn't obey prison rules. If he grows the beard longer than an inch, either they'll forcibly shave it or they'll discipline him, presumably as they would for any other violation of prison regulations. Your Honor, the rule that would come out of that holding would be that merely, I mean, any religious exercise whatsoever, whether it is important or whether it is not important, would automatically satisfy the substantial burden. Have you read Re Lupa? Yes, of course. That's what it says. You may disagree with it, but that's what the statute says as well as case law under it. And I guess our reading is simply the emphasis on the phrase substantial burden. My question, though, is if we were to disagree with you and reverse on the question of sincerity of belief, centrality of belief, and substantial burden, the next step is substantial government interest and no less restrictive alternative. You didn't brief that. You said if we reverse, we should just send it back to the lower court. Why should we not rule on that based on the record that we have before us and the fact that it's essentially a question of law? We are conceding that there are fact questions, and there are fact questions. What we would put into the record before the district court for findings of fact have to do with altering appearances and preventing concealment of contraband, hygiene issues, grooming issues, those sorts of things. We never had the opportunity to litigate that before the district court. Well, they were briefed before the district court. They were briefed and argued on our motion for summary judgment. There was never a cross motion for summary judgment by Mr. Nance. I think there was. There's just never been an opportunity to fully air out all of the issues. It was briefed on appeal, and you didn't respond. It was briefed on appeal, yes. Are you sure there was not a cross motion for summary judgment in the district court? I'm pretty sure, Your Honor, there was a motion for summary judgment. You're saying only by the prison, by the warden, not by Mr. Nance? Yes, that's right. He responded to the motion for summary judgment. There are probably other locations in the record. He did file a motion for TRO, for example, where arguments may have been raised. I'm not sure why this matters. They're not seeking judgment in his favor. They're seeking a reverse for us to set aside the summary judgment so they can go to trial. They're not seeking, or Mr. Nance is not, I think he is seeking judgment. In his reply brief, he actually did. I think they could. In his reply brief, he did argue for judgment. Well, we don't look at stuff in the reply brief. No, not stuff raised in the first instance. We do read the reply brief, to be clear. We do read the reply brief. No, we do read the reply brief. That is what claims made for the first time on reply, because the other side can't reply to them. Right. Well, on the incented oils, I guess you would concede that there is no important government interest and there are less restrictive alternatives, so judgment can be entered from that point. Well, we've taken care of that. I'm assuming. Attorney General will call the warden, right? Yes. That's going to be taken care of. Yes. Very good. There's nothing else. Okay. Thank you, Your Honors. All right. We took up all of your time. We'll give you a minute for rebuttal. I don't think you need to reply to the scented oils. Earlier, Your Honor, you asked about how the government could – whether – how we could solve this problem by requiring beards, and in Holtz, the Supreme Court held that the government – the department could solve this problem by requiring that all inmates be photographed without beards when first admitted to the facility, and if necessarily, periodically after. Prison guards would then have a bearded and then clean-shaven photo to use in making identifications. Did Mr. Nance file a cross-motion for summary judgment below? He did not file a cross-motion for summary judgment, but he filed a motion opposing summary judgment. I mean, Holtz dealt with half-inch beards, right? Half-inch. Holtz – yes. In Holtz, the prisoner in that case compromised and offered a compromise to allow his beard to be a half-inch, but that was merely a floor, not a ceiling. The Supreme Court held that anything below a half-inch would be a violation of ARLUPA, but whether or not anything longer than that is a violation. But whatever the alpha, there's a solution there. Taking pictures and the like wouldn't apply to full beards. It could apply to full beards. There's at least a tribal issue that this is not the least restrictive means in furthering a compelling interest. And so, again, we ask that this Court reverse summary judgment. Okay. Thank you.
judges: Kozinski, Owens, Wilken